I take it you've made your apologies to the counsel. I have, Your Honor, and I thank you to the clerk for calling me and I apologize to the court. May it please the court, Steve Mozales on behalf of Plaintiff Appellant Regina White. The issue in the case is a narrow one. Ms. White suffers from two distinct lower extremity impairments. She has already had her right hip replaced in the status post that surgery and not surprisingly developed a severe impairment of her left hip which now requires surgery. She has also, at the time of her right hip surgery, was prescribed a cane and there is no affirmative evidence in the record that the need for that cane had ever stopped. And the prescription for that cane appears in the record at page 220 of the court transcript. The Social Security ruling 969P states that when you have an individual who has the involvement of impairments with both lower extremities who needs a cane to ambulate, it is expressly recommended that the administrative law judge consult with a vocational expert to determine what effect, if anything, even at the sedentary level of exertion, that has on the impact to perform work. That is, you can't rely on the grid alone is what you're saying. Correct. The medical vocational guidelines only anticipate a narrow description of an individual. Someone who has the full range at any particular exertion, whether it's sedentary, light, medium. When you have someone who has some type of non-exertional impairment, whether it be a mental impairment, the use of the hands, or in this particular case the need for a device to ambulate, the commissioner counsels and the regulations ask that a vocational expert be present to determine whether or not there is an erosion in the ability to perform work at that exertional level. What about the failure of doctors to indicate that there is an ongoing need for the cane? Well, Dr. Workman performed after the hearing and evaluation and noted that she used the cane. So she consistently appeared throughout this record using a cane. She appeared at the examination with a cane. Dr. Workman had the opportunity to say that she didn't need the cane, that it was medically not necessary, and he didn't. There's a form, isn't there, that talks about that? Correct. There's a form that says whether or not the device is needed. But I would submit that not checking a particular box isn't an affirmative statement that it is not needed. We have no idea why he didn't affirmatively state that she did need it, but we also know that he didn't affirmatively state that she did not need it. So it's purely speculation whether or not he failed to check that box because he felt it wasn't needed, or if he just failed to check that box because he overlooked it. Now, in his narrative description, when he describes her functional limitations, he clearly could have easily typed, she presented with a cane, but I don't think it's needed. But he didn't do that. All we have is that the cane is medically necessary and was prescribed to her. And there's no contradiction in the record that the cane is no longer necessary. And so while we could ascribe to Dr. Workman's opinion that failing to check the box is the same thing as saying she doesn't need the cane, I don't think that would be a fair reading of the record or a fair interpretation of his report because he was on notice of the cane, yet didn't say one way or the other whether she needed it or not. Now, the ALJ said that he found her subjective testimony not to be supportive, which was contradicted, actually, by the medical evidence. And then, in his opinion, turns to impeaching through Dr. Workman, impeaching the Englewood findings, which are fairly strongly in her favor. Are you challenging at all the ALJ's rejection of the treating in favor of the consulting physician? To the limited extent in my brief where I point out that the treating physician prescribed the cane, and so obviously felt it was medically necessary when she prescribed it, and that Dr. Workman didn't say one way or the other in his narrative decision, affirmatively, whether or not he agreed or disagreed with that opinion. And so with respect to whether or not Ms. White needs to use a cane to ambulate the medical evidence, I would argue that the ALJ improperly disregarded the only affirmative prescription on the record stating that she actually does need that device to ambulate and it's medically necessary. But otherwise, the ALJ properly supported his? Do I feel that the residual function capacity assessment of the ALJ, except for the fact that he didn't properly consider the use of the cane, is correct? Yes, Your Honor. She's limited to the exertion she is. The only question remains is how does the need for a cane with someone who has had the two type of impairments dealing with their hips affect the ability to perform work? And so what the relief you're asking for is to be remanded so that the vocational expert provides the assessment rather than just using the grits. Correct, Your Honor, and I base that on the binding. I just want to know what relief is. Correct, and very briefly is just I didn't address it. I addressed it briefly because the district court felt that the ruling was a non-binding informal type of authoritative guidance, but we know that from the cases I've cited in the brief, GATLF as well as the regulations themselves, GATLF's G-A-T-L-I-F-F, that GATLF, I don't know what commissioner was in office at the time, that this court as well as the regulations cited say that the rulings themselves are binding on the administration and have the force of law to the administration. So when an ALJ ignores a particular ruling, he's actually ignoring the law. While they might not be binding on this court, we don't know. You're talking about the SSR 96-9P. Correct, and which clearly states that when we have a single, a device used in one hand with two lower extremities, because of the balance need, because of the two problems with the lower extremities, consultation with a vocational expert is strongly encouraged and, in fact, recommended. And so I would say that the district court, unfortunately, in analyzing the error of the ALJ, improperly gave lack of deference to the ruling as binding by saying that it wasn't. Okay. And I'll reserve my time for any rebuttal. All right. Thank you, Your Honor. Good morning. Good morning. I'm Jacqueline Forsland, and I'm appearing on behalf of the Commissioner. The medical evidence that was in the record at the time of the hearing that the ALJ reviewed was sparse and contained contradictions. Because of this, the ALJ sent a claimant to be evaluated by Dr. Workman, who was a board-certified orthopedic specialist, an orthopedic surgeon. Dr. Workman, his examination included range of motion studies and a neurological exam. Based on his examination, Dr. Workman concluded that claimant could perform the functional requirements of sedentary work, which is a significant limitation, specifically as to claimant's ability to walk. Could I ask, just to make sure I understand the rubric, though, if the cane was, in fact, something that she had to use and that hasn't been ruled out, is it proper to use the grids or would a VE then be required? If claimant had to use the cane all the time, most likely the grids would not be appropriate. Okay. So how do we know that she didn't? Based on Dr. Workman's opinion, he said she could ambulate on her own for short distances. And specifically in his RFC finding, he said she could stand and or walk for about two hours or said no more than two or three hours. Counsel, do you have the record in front of you? Yes, I do, Your Honor. Would you take a look at page 307, which is where Dr. Workman has that? Yes. And take a look at the structure of that whole set of questions. It begins by saying, are standing and or walking affected by the impairment? And he says, yes. Right? Then the next part says, if yes, how many hours total? And then it goes on, can the, with normal breaks, can the individual stand and or walk? All right? Now, the first box says, less than two hours and an eight-hour workday. All right? If less than two hours selected, provide explanation of the precise limitation opined below. What's the precise limitation that's opined below? The RFC finding. The only thing it can be, isn't it, is the one that says, medically required handheld assistive device is necessary for ambulation. If it weren't for that direction, that thing doesn't enter into it at all, does it? That's correct, Your Honor. Okay. Now, he's checked at least two hours and an eight-hour workday. So he's completed the response to that thing without having to state that last item. Now, how can you convert that into a finding that's adverse to the need? Do you understand the question? Yes, Your Honor. I mean, it's an awkwardly framed questionnaire, I recognize. But the only thing that whether it's necessary for ambulation relates to is if the first box, less than two hours, has been checked. If any of the others are there, the doctor is not required to answer it. Now, you've got an expert, Dr. Workman, right? So what inference can we possibly draw from the absence of that checking? Your Honor, I'd like to draw your attention to page 306 also, where Dr. Workman provided a narrative RFC. And in that narrative, he said she could not stand or walk for more than two to three hours in an eight-hour day. Now, he knew, or he intimated that she would probably need a cane for prolonged ambulation. That's what the Social Security. Where does it say that? Where does he intimate? On page 303, he stated that she walks with a limp. She uses a cane for ambulation, where she can walk without for short distance. But she does have an antalgic gait with this. And this is just part of the narrative, and he does not address her ability to stand. Well, but doesn't that then intimate that in all of his responses, he's assuming she's using a cane? No, Your Honor. That would be an important functional limitation. It would be included in the residual functional capacity finding. But that's an omission. That's a failure state. I mean, what he says is that she walks with a limp. She uses a cane for ambulation. Okay? That's what he says. That means any time she's moving, she's using a cane, right? And then he says the patient can sit. She cannot stand. She would have problems kneeling. I'm looking at 306. So I don't see anything in here that rules out or assumes that she isn't using a cane in any of the ambulatory kind of functions. And the answer to the box, as Judge Shader pointed out, doesn't require him to check two, you know, check the lower box at all. It says, you know, it's consistent with what he said. She can work at least two hours in an eight-hour day, which doesn't require him to say with an assistive device. That's only responsive to the first box. So where is it here that we can assume Dr. Workman is taking the cane out of the picture? He commented that she used a cane. He did not say it was medically required. He didn't just comment, ma'am. Counsel, what I'm suggesting is the predicate to his whole evaluation is that she ambulates with a cane. And that's a statement of, you know, that's unrestricted. He doesn't say she ambulates with a cane after standing for two hours. So why wouldn't one reasonably infer from this that his whole evaluation assumes throughout that, yes, she's using a cane? Has anybody asked him to clarify what he means? I don't believe so, Your Honor. Could the ALJ have done so? Wouldn't he have an obligation to seek clarification if there were some doubt? We would submit that the ALJ's interpretation of this report is a rational interpretation because he said she used a cane for ambulation but could go without it for short distances. In that paragraph, he doesn't address her. Doesn't that bear importantly on ability to carry on work? You know, as contrasted with a full range, which is what you get from the grid, doesn't that really point to the idea, well, let's get the vocational expert in to talk about are there jobs that exist to a significant number in the community that she can handle? Yes, Your Honor. But 96-9P states that the occupational base for sedentary work for a claimant is not significantly affected if they need a cane for only prolonged ambulation. But there's nothing here that says that it's needed only for prolonged ambulation. It says she used it all the time. Is that right? Your Honor, the RFC opinion is the most this person can do within their limitations. And the need for a cane is not expressed in the residual functional capacity to perform sedentary work. Now, a logical inference. I'm sorry. I just want to make sure. Where's the RFC that you're referring to? Okay. It's expressed in two places on page 306 and 307. There's a narrative on 306. And I'm still looking to see, given page 303, which says she ambulates with a cane. I don't understand. There's nothing in the RFC. He talks about lifting, can sit, cannot stand or walk for more than two to three hours. There's nothing in there that says that's without a cane. Nothing. I mean, the only affirmative statement about the cane is that she ambulates with a cane. So why should we read this RFC to say she can walk for up to three, for two to three hours in an eight-hour day, but suddenly in those she's not ambulating with a cane? Why would anyone infer that as a reasonable interpretation? Well, the RFC finding is that she can stand and or walk. Yes, but with a cane. Nobody's arguing that she can. As I understand counsel, counsel is saying she has, she can do the sedentary work, but she has to do it with a cane. And that takes it outside the grid. It is a VE to say, all right, in your hypothetical evaluation of what jobs are available, factor in that she's walking with a cane, not that she's just somebody who can stand up and at any given moment walk expeditiously across the room without the cane. I can tell you we've got people on this court, judges, who have to ambulate with a cane because of hip surgery. And I can tell you they would feel very restricted in certain jobs that they could do during the time that they have to ambulate with a cane. That's all I'm trying to get clear here. Well, of course, each case is spatially distinct, and there was conflicting evidence in this case. In fact, her own physician at the orthoarthritis clinic at UCLA Medical Clinic just several months before the hearing, which would have been several months before the examination, observed that her gait was normal, within normal limits. But, you know, first of all, the ALJ didn't find that persuasive evidence. He relied on Dr. Workman, and I think it's appropriate to look to Dr. Workman, but Dr. Workman, on close reading, is saying she ambulates with a cane. He's not saying she doesn't. He just says she does. So now, with that in mind, what can she do, and a few pages later, without taking the cane out of the equation, says she can walk up to two to three hours. Stand and or walk for two to three hours. Stand and or walk. Well, obviously, if she's... Because sedentary work is normally just requires... Doesn't this come down to whether the grids or the VE were appropriate? Right. And why are we making such a big deal out of this? Because if she can perform a significant range of sedentary work, the grids are appropriate. Without a cane? Or with a cane? She'd have to be able to stand and or walk for the two hours without a cane. Okay, and you can't tell that from this report? I think it's a reasonable... I think you can, and if we thought it wasn't clear, then all that happens here, it goes back, and the ALJ poses the question. And if you're right, she may wind up in the same position, but at least it wouldn't have been just checking off a box on a form. I would submit that if Dr. Workman intended to state in his residual functional capacity finding that claimant could not walk or stand and or walk for two hours without a cane, he would have stated that. He did. He states it. He says she ambulates with a cane. That's the reference to the cane. Yeah, but what troubles me is that, you know, I first got onto this thing when I looked at the form after having you, after your having said at pages 14 to 15 of your brief, indeed he, that is Dr. Workman, specifically indicated that claimant did not medically require a handheld assistive device to ambulate. Transcript 307. I look at 307, not there, and that's troublesome, you know? And the question really comes down again not to whether some kinds of sedentary work may be available, but whether, as the grid calls for, the total range of sedentary work is available. And we have an incomplete medical record in that sense. And that's what really Judge Fischer has been driving you toward, I think. Is that so? Well, Your Honor, on page 307, the limitation to two hours a day means that person can stand or walk, period, for two hours a day. If she couldn't stand and or walk for two hours a day, he would have marked the last one. It's not asked for. It's not asked for. He can. She can stand or walk, but she can do it with a cane. No, if she needed an assistive device for ambulation at all times, he would have marked the last one. Why? What would direct him to do that? Medically required handheld assistive device is necessary. That relates only to the less than two hours. That's what I started out by asking the counsel. If you look at the form, maybe the form ought to be redesigned, but we deal with it only as it is. I'm not reading it like that. But where would he opine? Is less than two hours, if less than two hours provide explanation of the limitation opine below, does that refer them then to check off one of the next three boxes or write separately somewhere? Now, Your Honor, can you direct me to the, is it at the top where you're saying? Well, I'm looking at the form. I think Judge Shader is calling to our attention. If I'm asked, if he believes that she can stand at least two hours in a day in an eight-hour workday, which he, that's what he said, he checks that box. Right. Okay? She can do that for two hours. She can do that. It doesn't say that, and if it's less, but the box above that says if it's less than two hours in an eight-hour workday, it says if less than two hours provide an explanation of the precise limitation opined below. Now, does that direct him then to check? If he checked box one, would he then check box four? At the top, it says to check one box in each section, so it's either or. Right. Okay. So the only below, then, is the fourth box, and the fourth box relates only to the first one. Right? Somehow. If a person can stand or walk for two hours. You ever see Cool Hand Luke? What we have here is a failure to communicate. If they can stand or walk for two hours, that means they can do it on their own. I mean, they're not leaning on anything. Okay. All right. Well, okay. I would submit, Your Honors, that the ALJ's interpretation of the evidence was rational. Okay. And that his decision was based on substantial evidence. Okay. Thank you. Thank you very much. Thank you for being patient. If I may, just very briefly. Your Honors, the satisfaction with this form is clear, and I would agree. It's a standard form that a lot of physicians fill out. Turning back to that section two with the box at least two hours, we actually understand that when a physician checks that, you could probably read that as saying that all he's saying is that they can stand at a minimum two hours, but there's actually no cap on it, properly read. So when this box is checked by any physician, not just Dr. Workman, we don't really know if they're saying two hours or at least two hours up to, well, the next doctor. What does this have to do with the cane? Well, my point is then we turn back to the narrative to see what Dr. Workman said. And, again, we have two to three hours, and as Your Honor mentioned, he only remarked short distances. Now, we don't know if that meant in his medical examining room when he asked her to walk across the room to watch her gait, or if he meant we don't have an idea of what a short distance meant. And as Your Honor mentioned, being a judge, I would have, for most intensive purposes, is a sedentary occupation. But within that sedentary occupation, occasionally we have to go that far. One lawyer who appeared before me referred to it as a sedimentary occupation. I wouldn't go that far, Your Honor. But I have a sedentary occupation, but I lug around large files. But we still have to walk long distances on occasion down a long hallway. And so that's why even at the sedentary level, although in an eight-hour date. We understand that. What we're, I think, trying to puzzle out here is, as doctor, do we read, as apparently the ALJ did and as counsel is arguing, that his opinion, starting off that he says she ambulates with a cane, but then his RFC narrative and the box are consistent with his view that she can stand or ambulate for at least up to two to three hours. Without a cane. No, I don't think that would be a fair reading, Your Honor. Because? Because, as you stated, the only affirmative thing we have, only affirmative comment we have on the record is the narrative where he agrees that she ambulates with a cane always, except comma for short distances. How far a short distance, in Dr. Workman's opinion, is something we don't know. Okay. Got your point. And so I would just refer back to the ALJ's decision. And as you've remarked, it seems to be incomplete because he doesn't address this most important specific limitation. Okay. And I would submit that the remand is warranted because, unfortunately, the district court, again, didn't feel that the ruling was binding. It is on the administration. And Ms. White deserves the opportunity to find out whether or not her use of the cane as a result of her bilateral hip problems allows her to perform sedentary work at her age with her educational work experience. Okay. Thank you very much. Thank you. And I apologize again to the Court for the miscommunication. I may not be in there on time. All right. Yes. Please don't let it happen again. We have long memories. Okay. All right. We will stand in adjournment, actually, in the last case on calendar for the week. We thank counsel for their arguments. And the case is submitted.
judges: Tashima, Fisher, Shadur